UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------------------X
ROBYN PAYNE

                                                                                    Case No.:

                            Plaintiff,

           -against-                                         COMPLAINT
                                                                                    AND JURY DEMAND

GUTMAN, MINTZ, BAKER & SONNENFELDT, LLP

                          Defendant.
---------------------------------------------------------------------X

## INTRODUCTION

1.     Plaintiff Robyn Payne brings suit against debt collection law firm Gutman, Mintz, Baker & Sonnenfeldt, LLP for their violations of the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et seq., and N.Y. General Business Law 349 for its attempts to execute on a satisfied and vacated judgment.

## SUMMARY OF CLAIMS

2.     In 2015, now-Plaintiff Robyn Payne was sued by her landlord, La Maruja Realty Corp, in state court for allegedly unpaid rent. The parties settled the suit through a stipulation, which was so-ordered and reduced to judgment by the court. Pursuant to the terms of the stipulation, Ms. Payne was required to pay her landlord $9,930 in back rent, and La Maruja Realty Corp was required to make certain repairs to Ms. Payne's apartment.

3.     Ms. Payne complied with the terms of the stipulation, promptly remitting the full $9,930 to her landlord within the time period specified in the stipulation. La Maruja acknowledged receipt of the $9,930 by executing a satisfaction of judgment and filing the same with the court that had issued the judgment. As a result, the court issued an order of disposition and vacated the judgment. Ms. Payne thought the matter was resolved, and endeavored to put the incident behind

her.

4. However, less than one year later, La Maruja transferred the account to another attorney, Defendant Gutman, Mintz, Baker & Sonnenfeldt, LLP, a debt collection law firm. Gutman Mintz, on behalf of La Maruja, unlawfully issued an information subpoena to Ms. Payne's talent agent, purporting the be the judgment creditor even though the judgment had been satisfied and vacated per the terms of the stipulation.[1] The incident damaged Ms. Payne's relationship with her talent manager and caused Ms. Payne to suffer serious anxiety, emotional distress, and economic uncertainty.

5. Ms. Payne immediately sent Gutman Mintz a cease and desist letter demanding that it stop attempting to execute on the already satisfied and vacated judgment. Ms. Payne also called Gutman Mintz to discuss the matter directly. Ms. Payne spoke to a "Mr. Thigpen," who summarily dismissed Ms. Payne's concerns and claimed, without explanation, that the judgment was valid and that the putative debt remained due and owing.

6. Incredibly, days after receiving Ms. Payne's letter and after Ms. Payne had told Mr. Thigpen directly that the judgment had been satisfied and vacated, Gutman Mintz again attempted to execute on the vacated judgment by issuing an income execution to New York City Marshal Ronald Moses. The income execution directed Marshal Moses to issue a wage garnishment to one of Ms. Payne's employers. This constituted a deliberate and unlawful attempt to seize Ms. Payne's hard-earned wages for a putative debt that had already been paid.

7. The information subpoena and income executions were sent out under the putative signatures of Gutman Mintz attorneys, falsely implying that an attorney had reviewed the facts of the case prior to attempting to execute. However, if Gutman Mintz had performed even a cursory

---

[1] ""Satisfying" and then "vacating" a judgment is apparently a common procedure in NYC housing courts.

review of the record, it would have known that it had no legal basis to execute on the judgment.

8.     The information subpoena constituted Gutman Mintz' initial communication by Gutman Mintz to Ms. Payne in connection with the collection of the putative debt. Thus, pursuant to 15 U.S.C. § 1692g(a), Gutman Mintz was required to provide Ms. Maria with a written notice of her rights within five days of the initial communication. However, Gutman Mintz did not make the necessary disclosure.

9.     Had Gutman Mintz provided Ms. Payne with a § 1692g notice prior to issuing the information subpoena, Ms. Payne would have been informed of her right to demand that Gutman Mintz provide verification of the putative debt. If Gutman Mintz had been forced to verify the putative debt, it would have reviewed the state court file and learned that the judgment was satisfied and vacated.

## JURISDICTION AND VENUE

10.    This action arises under the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.*, ("FDCPA"). Because the dispute involves predominant issues of federal law under the FDCPA, the Court has federal question jurisdiction pursuant to 28 U.S.C. § 1331.

11.    The Court has supplemental jurisdiction under 28 U.S.C. § 1367 over Plaintiff's state law claims because said claims are so related to the claims within the Court's original jurisdiction that they form part of the same case or controversy under Article 3 of the United States Constitution.

12.    Declaratory relief is available pursuant to 28 U.S.C. §§ 2201 and 2202.

13.    Venue in this federal district is proper because all or a substantial part of the events or omissions giving rise to Plaintiff's claims occurred in New York County, New York.

## PARTIES

14. Plaintiff Robyn Payne in an individual currently residing in Brooklyn, NY.

15. The obligation alleged to be owed by Plaintiff is a "debt as defined by 15 U.S.C. § 1692a(5) because the putative debt was incurred primarily for family, personal, or household purposes.

16. Plaintiff is a "consumer" as defined by 15 U.S.C. § 1692a(3) because Plaintiff was alleged to owe a "debt."

17. Defendant Gutman, Mintz, Baker & Sonnenfeldt, LLP ("Gutman Mintz") is a New York debt collection law firm that has its principle place of business in New Hyde Park, NY.

18. Gutman Mintz regularly collects or attempts to collect, directly or indirectly, debts owed or due, or asserted to be due to another. Gutman Mintz is a debt collector as that term is defined by 15 U.S.C. § 1692a(6).

## STATEMENT OF FACTS

*La Maruja files a lawsuit against Ms. Payne to collect putative back-rent*

19. On January 1, 2015, La Maruja filed a petition against Ms. Payne in New York County Civil Court, seeking allegedly unpaid rent. *See* Exhibit A.

20. Ms. Payne filed an answer on February 2, 2015, alleging that La Maruja had failed to make necessary repairs on Ms. Payne's apartment. *See* Exhibit B.

21. On February 9, 2015, the parties executed a stipulation whereby Ms. Payne agreed to pay $9,930.00 to La Maruja by March 31, 2015, and La Maruja agreed to make certain repairs to Ms. Payne's home. *See* Exhibit C.

22. The settlement was "so-ordered" by the judge, and judgment was entered on February 9,

4

2017. *See* Exhibit D.

23. Ms. Payne paid the full $9930.00 prior to the March 31, 2015 deadline. Thus, on November 18, 2015, La Maruja executed a satisfaction of judgment and filed the same with the court. The satisfaction of judgment states that the "judgment has been satisfied and the sum of $-0 remains unpaid." *See* Exhibit E.

24. On January 13, 2016, the court issued a certificate of disposition of judgment, acknowledging the payment and vacating the judgment. *See* Exhibit F

25. As the judgment had been satisfied in full and subsequently vacated, Ms. Payne believed she was free of the matter.

26. However, less than a year after the judgment was vacated, La Maruja began attempting to execute on the satisfied and vacated judgment through its new attorney, Gutman Mintz.

### *Gutman Mintz misrepresents the validity of the judgment, unlawfully attempts to execute on the satisfied and vacated judgment, and discloses collection efforts to third parties*

27. Gutman Mintz executed an information subpoena dated October 4, 2016 directed to Ms. Payne's talent agent, Wolf Talent Group. *See* Exhibit G.

28. On or about Friday, October 14, 2016, Ms. Payne got a call from her manager, who informed her that her talent agent had received an information subpoena and was upset that she became involved in the matter. That evening, Ms. Payne went to her talent agent's office to retrieve the information subpoena.

29. Ms. Payne was embarrassed that her talent agent would think that she was a "deadbeat", or financially irresponsible, when in fact she timely paid the stipulation.

30. The information subpoena falsely stated that there was a valid judgment against Ms. Payne, and that the full judgment amount of $9,930.00 remained due and owing.

31. Further, the subpoena required Ms. Payne's talent agent to disclose to a debt collection

5

law firm the most intimate personal and financial details, so as her date of birth, social security number, salary, bank name, and bank account numbers. Gutman Mintz had no right to any of this information and it was embarrassing and outrageous that it would seek such information with no legal right.

32.     The information falsely threatened Ms. Payne's talent manager that the manager could be held in "CONTEMPT OF COURT" if the manager did not, "***WITHIN 7 DAYS***" answer "IN WRITING UNDER OATH, SEPARATELY AND FULLY, ***EACH QUESTION***" regarding Ms. Payne's personal and financial information. (Capitulations and emphasis in the original).

33.     This has harmed – and continues to this day – to harm Ms. Payne's relationship with her talent manager.

34.     As no judgment actually existed, Gutman Mintz violated 15 U.S.C. § 1692c(b) by communicating with the a third party (the talent agent) in connection with the collection of a putative debt.

35.     Confused and scared, Ms. Payne went to Manhattan Civil Court the following Monday, October 17, 2016. After Ms. Payne spent four and a half hours at court attempting to ascertain why the information subpoena was issued, a court employee confirmed that the judgment had indeed been paid in full and subsequently vacated pursuant to the November 18, 2015 satisfaction of judgment.

36.     On October 17, 2016, Ms. Payne sent Gutman Mintz a cease and desist letter demanding that it stop attempting to execute on the already satisfied and vacated judgment. Ms. Payne attached the certificate of disposition of judgment and the satisfaction of judgment to the letter and sent it to Gutman Mints via fax and certified mail return receipt requested. *See* Exhibit H.

37.     After Ms. Payne sent the fax to Gutman Mintz she called Gutman Mintz.  She provided

the index number and told Gutman Mintz they were trying to collect on a satisfied and vacated judgment.

38. Ms. Payne spoke to an individual who identified himself as "Mr. Thigpen." Mr. Thigpen summarily dismissed Ms. Payne's concerns and claimed, without explanation, that the judgment was valid and that the putative debt remained due and owing. Gutman Mintz has never replied to Ms. Payne's letter.

39. On the call Mr. Thigpen threatened to garnish Ms. Payne's wages despite the fact that there was no judgment and despite the fact that Ms. Payne had faxed Gutman Mintz the satisfaction of judgment and Case Summary showing the judgment was satisfied and vacated. Gutman Mintz's threat to garnish Ms. Payne's wages based on a non-existent judgment constituted a threat to take an action prohibited by law, in violation of 15 U.S.C. § 1692e(5).

40. Gutman Mintz executed an income execution dated October 14, 2016 for Ms. Payne's putative employer. Gutman Mintz forwarded the income executions to NYC Marshal Ronald, who received it on October 28, 2106.

41. In issuing the income execution, Gutman Mintz knew and intended that Marshal Moses would serve the income execution, along with a notice of garnishment, to Ms. Payne, as required by CPLR § 5231(d). Specifically, Marshal Moses mailed the income executions to Ms. Payne along with a Notice of Garnishment dated October 31, 2016. *See* Exhibit I.

42. Marshal Moses' Notice of Garnishment stated that Ms. Payne had twenty days to remit payment; otherwise her wages would be garnished. The Notice of Garnishment demanded payment of $12,050.06, together with interest, costs, and Marshal's poundage.

43. When Ms. Payne received the Notice of Garnishment, she was understandably terrified

that she would be forced to pay upwards of twelve thousand dollars for a debt that she did not owe.

44.     The information subpoena and income execution sought to collect a judgment when in fact the judgment had been satisfied and vacated. The communications therefore misrepresented the character and legal status of the debt in violation of 15 U.S.C. § 1692e(2)(A).

45.     For example, the income execution falsely stated that there was a valid judgment against Ms. Payne and that the full $9,930 remained due and owing. By issuing the income execution, Gutman Mintz falsely communicated to the least sophisticated consumer that it had the legal authority to garnish Ms. Payne's wages and to take other steps to execute on the vacated judgment.

### *Gutman Mintz misrepresented to Ms. Payne that it had performed a meaningful attorney review of the facts and circumstances surrounding their claim*

46.     The information subpoena and income execution are legal instruments that are required to be signed by an attorney and can only be issued if an attorney has considered the legal and factual basis for the issuance. By issuing the income subpoena and income execution under the putative signature of Gutman Mintz attorneys, Gutman Mintz represented to Ms. Payne that an attorney had performed a meaningful review of the facts and circumstances of the consumer's putative account and the representations made in the written communications.

47.     An individualized, meaningful attorney review is required in order for a written communication to be considered "from an attorney" within the meaning of the FDCPA, 15 U.S.C. § 1692e(3).

48.     However, no meaningful attorney review was performed as to the information subpoena or the income execution.

49.     Had the attorney who signed the information subpoena or the income execution

8

performed a meaningful attorney review prior to signing those instruments, she would have, for example, 1) obtained and reviewed the court file from its client, from the prior attorney, or from the courthouse, which would reveal that the judgment had been satisfied and vacated, or at the very least checked public computers at the courthouse (which would have shown the judgment was satisfied and vacated); 2) checked to see if Gutman Mintz had sent a § 1692g notice in its initial communication or within 5 days thereafter of its initial written communication with Ms. Payne; and 3) checked its client's ledger to ascertain whether the judgment had been paid.

50.    That a meaningful attorney review would entail the above steps is especially true given Gutman Mintz specialized knowledge of how housing court stipulations and judgments are regularly obtained and satisfied.

51.    Gutman Mintz is a large collection firm that specializes in housing court cases and collecting on judgments for past due rent. Gutman Mintz knows that is common that stipulations include the entry of a judgments, followed by a satisfaction and vacatur, if the terms of the stipulation are satisfied, typically the payment of the past due rent. Therefore, given its own specialized knowledge of housing court proceedings, it knows that there is a significant likelihood that a stipulation would in fact be complied with, which would in the judgment being satisfied and vacated.

52.    Gutman Mintz is a large debt collection law firm handling tens of thousands of housing collection cases and rent judgment enforcement actions. Given that standardization of collection procedures for mass-collection law firms, and its obvious complete and utter failure to do so in this case, a reasonable inference is that Gutman Mintz fails to perform a meaningful attorney review prior to executing on putative judgments, particularly thus it was not involved in the entry of the judgment.

### *Gutman Mintz failed to provide the disclosures required by 1692g, depriving Ms. Payne of important rights*

53.     Gutman and Mintz's initial written communication with Ms. Payne in connection with collection of the putative judgment was the information subpoena issued to her talent agent on October 4, 2016. Gutman Mintz knew there was a high likelihood that the talent agent would ask Ms. Payne was going on and show her the information subpoena.  At the very least, Gutman Mintz's income execution dated October 14, 2016 was the initial communication with Ms. Payne.  Gutman Mintz forwarded the income executions to Marshal Moses knowing and specifically intending that Marshal Moses would serve those income executions to Ms. Payne as required by CPLR § 5231(d).

54.     Gutman Mintz violated 15 U.S.C. § 1692g by failing to provide notice of important rights Congress specifically required debt collectors to provide at the outset of its collection efforts. Congress required the disclosure the disclosure of this information at the outset of the collection process to prevent what happened here: the further collection of a debt not owed.

55.     Gutman Mintz' failure to provide the 1692g notice concealed and deprived Ms. Payne of two important rights conferred by Congress.

56.     First, 1692g(a) required Gutman Mintz to disclose in its initial communication or within 5 days thereafter that they were attempting to collect on the putative judgment by disclosing, *inter alia*, the name of the creditor to whom the debt is alleged to be owed and the amount of the debt. Had Gutman Mintz done so, Ms. Payne would have provided Gutman Mintz a copy of the satisfaction of judgment or the Case Summary documenting that the judgment was both satisfied and vacated.

57.     Second, by failing to provide the 1692g notice, Gutman Mintz stripped Ms. Payne of another important right conferred by Congress: her right to force Gutman Mintz to immediately

cease all collection activity until it verified the validity of the judgment by sending a written dispute. Even the most ministerial of verifications of the validity of the judgment would have discovered the judgment was satisfied and vacated.

58. Given that Gutman Mintz did not provide a 1692g notice here, and given that firms that collect tens of thousands of judgments a year employ standard practices about sending of form 1692g letters, a reasonable inference is that it is the pattern and practice of Gutman Mintz not to send out 1692g notices prior to collecting on judgments where it was not the attorney that obtained the judgment.

### *Gutman Mintz' conduct inflicted damages on Ms. Payne*

59. Defendant's conduct caused Ms. Payne to experience emotional and mental pain and anguish, embarrassment, and humiliation.

60. Ms. Payne—an actress and performer—had just signed a contract with a new talent agent when Gutman Mintz began attempting to unlawfully execute on the satisfied, vacated judgment. When Ms. Payne's agent received the information subpoena she was angry that she had suddenly become involved in Ms. Payne's personal financial business. The incident put a strain on Ms. Payne's professional relationship with her agent, causing Ms. Payne to experience extreme embarrassment and anxiety about the future of her career and her ability to make a living. These fears were compounded when, just after learning of the information subpoena on October 14, 2016, Ms. Payne gave a sub-par performance during an important audition due to her stress and anxiety.

61. Prior to the information subpoena being issued, Ms. Payne had been planning to take over her roommate's lease on the apartment they shared. She feared that the incident would prevent her from taking over the lease, that she would be forced to find a new home, and that she would

11

be unable to pay a security deposit on a new apartment if she were forced to pay more money on the already satisfied judgment.

62. Ms. Payne learned of the information subpoena on Friday, October 14, 2016, and had to wait until the following Monday to go to Court to obtain a copy of the court file. Ms. Payne experienced intense feelings of embarrassment, anxiety and fear during the weekend.

63. Due to her stress, Ms. Payne had trouble sleeping, waking up frequently during the night and tossing and turning while thinking of the putative debt and her now-strained relationship with her talent agent. Ms. Payne experienced physical effects of anxiety. The stress affected Ms. Payne's menstrual cycle, which caused Ms. Payne great fear and shock.

64. Ms. Payne's emotional distress continues to this day. She feels angry when she thinks about Gutman Mintz' shameful disregard for her rights, and she continues to feel stress and anxiety surrounding her relationship with her talent agent.

## **FIRST CLAIM FOR RELIEF**
### *Violations of the Fair Debt Collection Practices Act*

65. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

66. The purpose of the FDCPA is "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses."  15 U.S.C. § 1692(e); see also *Hamilton v. United Healthcare of La., Inc.*, 310 F.3d 385, 392 (5th Cir. 2002) ("Congress, through the FDCPA, has legislatively expressed a strong public policy disfavoring dishonest, abusive, and unfair consumer debt collection practices, and clearly intended the FDCPA to have a broad remedial scope.").

67.     Congress designed the FDCPA to be enforced primarily through private parties – such as plaintiff – acting as "private attorneys general." See S. Rep. No. 382, 95th Con., 1st Sess. 5, ("The committee views this legislation as primarily self-enforcing; consumers who have been subject to debt collection abuses will be enforcing compliance"); *Jacobson v. Healthcare Fin. Servs.,* 516 F.3d 85, 91 (2d Cir. 2008) ("In this way, the FDCPA enlists the efforts of sophisticated consumers like [plaintiff] as 'private attorneys general' to aid their less sophisticated counterparts, who are unlikely themselves to bring suit under the Act, but who are assumed by the Act to benefit from the deterrent effect of civil actions brought by others.").

68.     Defendant materially violated the following sections of the FDCPA: 15 U.S.C. §§1692c, 1692e, 1692f, 1692g. By way of example and not limitation Defendants violated the FDCPA by taking the following actions in an attempt to collect a debt or in connection with an attempt to collect a debt: communicating with the a third party (the talent agent, possibly the putative employer) in connection with the collection of a putative debt in violation of 15 U.S.C. § 1692c(b) given there was no judgment; failing to provide the disclosures required in the §1692g disclosure, and continuing to collect after receiving the dispute; using false, deceptive or misleading representations or means; misrepresenting the character, amount, or legal status of the debt; making the false representation or implication that any individual is an attorney or that any communication is from an attorney; threatening to take and actually taking an action prohibited by law; using any false, deceptive or misleading representations or means; communicating or threatening to communicate to any person credit information which is known or which should be known to be false; using unfair or unconscionable means; communicating improperly with a third party; and collecting or seeking to collect any amount (including any interest, fee, charge, or expense incidental to the principal obligation) unless such amount is expressly authorized by

the agreement creating the debt or permitted by law.

69. Plaintiff seeks actual and statutory damages, attorney's fees and costs for Defendant's violations of the FDCPA.

## SECOND CLAIM FOR RELIEF
*Violations of N.Y. Gen. Bus. Law §349*

70. Plaintiff repeats and realleges each and every allegation contained in the previous paragraphs as though fully set forth herein.

71. New York General Business Law Section 349(a) prohibits "deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in this state…"

72. An individual "injured by reason of any violation of this section may bring an action in his own name to enjoin such unlawful act or practice, an action to recover his actual damages or fifty dollars, whichever is greater, or both such actions." N.Y. Gen. Bus. Law § 349(h). An individual so injured may also be awarded treble damages and punitive damages.

73. Defendant violated N.Y. Gen. Bus. Law § 349 by engaging in deceptive acts and practices in the conduct of their businesses that caused specific harm to Ms. Payne and broadly impact consumers at large.

74. As a direct and proximate result of Defendants' violations of N.Y. Gen. Bus. Law § 349, Plaintiff suffered compensable harm and is entitled to preliminary and permanent injunctive relief, and to recover actual, treble, and punitive damages, together with costs and attorney's fees.

## PRAYER

**WHEREFORE**, Plaintiff Robyn Payne respectfully requests the following relief:

   a. A declaration that Defendants have committed the violations of law alleged in this

       action;

b.    An order enjoining and directing Defendants to cease violating N.Y. GBL § 349;

c.    Actual damages;

d.    Statutory damages under 15 U.S.C. § 1692k and N.Y. GBL § 349;

e.    Treble and punitive damages under GBL N.Y. GBL § 349;

f.    Costs, disbursements and attorneys' fees under 15 U.S.C. § 1692k and N.Y. GBL § 349;

g.    Prejudgment and post judgment interest as allowed by law;

h.    All other relief, in law and in equity, both special and general, to which Plaintiff may be justly entitled.

## JURY DEMAND

Plaintiff demands a trial by jury.

    Dated:  September 22, 2017
             Brooklyn, New York

    Respectfully submitted,

    /s/
    _____
    Ahmad Keshavarz
    THE LAW OFFICE OF AHMAD KESHAVARZ
    16 Court St., 26th Floor
    Brooklyn, NY 11241-1026
    Phone: (718) 522-7900
    Fax: (877) 496-7809
    *Plaintiff's Attorney*